UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

United States of America,

Plaintiff,

vs. ORDER

Douglas R. Askegard, individually and as personal representative of the Estate of Gladys M. Askegard; David Askegard; Wayne Aslesen; Aileen Askegard Clough, individually and as trustee of the Clough Family Trust and John Doe, trustee of the Clough Family Trust,

Defendants. Civ. No. 01-845 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 2nd day of July, 2003.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge, pursuant to the consent of the parties, as authorized by Title 18 U.S.C. §636(c), upon the Motion of the Defendants for Summary Judgment on statute of limitations grounds. At a Hearing on the Motion, the Government appeared by Mary E. Bielefeld, Assistant United States Attorney, and the Defendants appeared by Jon J. Jensen, Esq. For reasons which follow, we deny the Defendants' Motion.

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. Factual and Procedural History

This is a civil action that was commenced by the United States, in order to reduce to Judgment, certain Federal tax assessments, which were made against the Defendant Estate of Gladys Askegard ("Estate"), unpaid Estate Tax assessments that have been imposed on the Defendants David Askegard ("Askegard"), Wayne Aslesen ("Aslesen"), and Aileen Askegard Clough ("Clough"), as the beneficiaries of the Estate, and unpaid Estate Tax assessments that have been imposed on Askegard individually. The suit also seeks to foreclose a lien for an Estate Tax against certain real property. The Defendants have moved for Summary Judgment on the ground that the relevant statute of limitations is a bar to this action.

Gladys Askegard died on February 1, 1981, and, on March 1, 1981, Askegard was appointed as the Personal Representative of the Estate. In that capacity, on April 29, 1982, Askegard filed a United States Estate Tax Return (Form 706)("Return"), which reflected a tax due of $215,588.98. The Return also included an election, under Title 26 U.S.C. §6166, to defer a portion of the tax due, and to pay that deferred tax liability in ten equal annual installments. The general rule is that taxes are imposed upon the transfer of a decedent's taxable estate, and that the tax is generally due within nine months after the decedent's death. See, Title 26 U.S.C. §§2001, 6075(a) and 6161(a).

Section 6166 provides an exception to that general rule, and permits, in a case where a decedent's interest in a closely-held business exceeds sixty-five percent of his or her adjusted gross estate, a deferral of the payment of the Federal tax attributable to the value of that closely-held interest. Section 6166(a)(1)-(2).[1] Specifically, under such an election, the deferred amount may be paid in up to ten equal installments, with the first of those payments becoming due five years after the date on which the Federal Estate Tax would otherwise be owing. Section 6166(a)(3). Under Section 6166, interest accruing on the deferred tax liability remains due annually, even during the deferment period.

Together with the Return, Askegard submitted $18,023.23, to pay the principal and interest due on that portion of the Estate Tax which was not entitled to the Section 6166 deferral. A delegate of the Secretary of Treasury accepted the Section 6166 election, and then, on June 21, 1982, made an assessment against the Estate for Federal Estate Taxes in the amount of $215,572.00. Thereafter, following an audit of Askegard's Return on April 2,

[1]Section 6166 was enacted in order to alleviate the burden of paying Federal Estate Taxes in those situations where a substantial portion of the value of a decedent's estate is attributable to an interest in a closely-held business, so as to prevent forced liquidations of those businesses in order to pay Estate Taxes. See, Lake Shore National Bank v. Coyle, 419 F.2d 958, 962 (7th Cir. 1969).

1984, some additional taxes were assessed against the Estate. Collection of those taxes was also tolled by the Estate's Section 6166 election. Three parcels of the Estate's real property were pledged as security for the deferred payments. As part of the Section 6166 election, Askegard, as the Estate's Personal Representative, was required to complete, sign, and return to the IRS, together with the annual interest payments, a certification form, which advises the IRS of any changes in his address, and certifies the status of the Estate.[2]

The first of the three annual installment payments of interest -- which were not subject to deferral under the Section 6166 election -- were timely made by the Estate. Thereafter, the Estate made periodic partial payments of interest, and requested several one-year extensions of the deadline, in which to pay the deferred Estate Tax. The Estate's 1989 application for an extension was

---

[2]In addition to the election to defer payment of the Estate Taxes, the Defendants also elected a special-use valuation for the three parcels of property that it had pledged as security for the Section 6166 election. See, Title 26 U.S.C. §2032A. As a general rule, when a person dies, all property left to his or her estate is valued, and the Estate Tax is computed, on the basis of the fair market value of that property. However, for farms, or closely-held business realty of the estate, a special-use valuation may be used, which allows the estate to value such land on the basis of its value as a farm, or as a closely-held business, rather than at its best use value. The Defendants' closely-held business was a family farm, and their application for a special-use valuation was granted, such that the Estate was afforded the benefit of substantially lower valuations for the realty.

granted, but its subsequent applications were denied. When the deferred tax became due in November of 1990, the Estate did not pay the taxes.

In February of 1989, the Federal Land Bank foreclosed against two of the three parcels of land. The property was sold and, on February 5, 1990, the Defendants asked the IRS to remove its special-use valuation lien from the property. The IRS agreed to do so. Then, on February 7, 1990, Askegard redeemed the property, and sold it to two of his father's cousins. On August 30, 1991, the IRS provided the Defendants with written notice that it was revoking the Section 6166 election. On May 16, 2001, the IRS filed this action.

Ordinarily, the statute of limitations for the collection of a tax liability begins to run on the date that the taxpayer is assessed that liability, and runs for ten years. However, during the period of a Section 6166 election, that statute of limitations is suspended. See, Section 6503(d); 26 C.F.R. dd301.6503(d)(1). The question presented, by the Defendants' Motion for Summary Judgment, is when that suspension was lifted, so as to allow the statute of limitations to start to run. The Defendants argue that the suspension automatically ended when they first "defaulted" on the Section 6166 election which, they believe, was either in 1984, when they first failed to make a required interest payment, or on

February 7, 1980, which was the date of the foreclosure sale. The Government disagrees, and argues that the suspension did not conclude until the IRS gave Notice and Demand, on August 30, 1991. The Government has also argued that the Defendants have not made a prima facie showing that the statute of limitations bars this action.[3]

## III. Discussion.

Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Duffy v.

---

[3]At the time of the Hearing, the Defendants suggested that the Government, by raising that issue, was alleging the existence of a question of material fact which it had not raised in its briefing papers, and so, should be precluded from raising at the Hearing. The Government countered that they were merely asserting that the Defendants had not met their burden of making a prima facie showing that the statutory period had run, and was not disputing some fact. We agree. The Government's argument merely asserts that the Defendants have not shown that the statute of limitations bars this action, because they have failed to present any evidence showing that the foreclosure sale resulted in the disposition of one-third, or more, of the value of the qualifying property, as is required to trigger the statutory provision that they rely on -- Section 6166(g). Further, we note that the Government did raise this issue in their Opposition to the Defendants' Motion for Summary Judgment, at p. 12, where the Government asserted that the "Defendants have failed to make out a prima facie case," because "[t]hey have not produced evidence that the sale constituted one-third or more in value of an interest in a closely held business which qualifies under Section 6166(g)(1)(A)(i)."

Wolle, 123 F.3d 1026, 1040 (8th Cir. 1997), cert. denied, 523 U.S. 1137 (1998). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire & Casualty Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003); Jenkins v. Southern Farm Bureau Casualty, 307 F.3d 741, 744 (8th Cir. 2002); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine

issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

A. Whether the Defendants Have Made Prima Facie Case that the Statute of Limitations has Expired.

The Government contends that the Defendants have not demonstrated that the statute of limitations bars this action and, therefore, they have failed to meet their burden in asserting an affirmative defense. Here, the parties do not dispute the applic-

ability of the general ten year statute of limitations found in Section 6503(d). Instead, the dispute revolves around when the suspension of that period, effected by the Section 6166 election, should cease. In their argument, the Defendants have asserted that, under Section 6166(g), the suspension was lifted automatically upon foreclosure, in February of 1989. The Government contends, however, that, even if Section 6166(g) could automatically terminate the suspension, imposed by a Section 6166 election in some cases, the Defendants cannot here rely on that provision because they have failed to show that it applies here.

It has long been the rule that defendants bear the burden of proof as to affirmative defenses, including the assertion that a statute of limitations is a bar to an action. See, Schmidt v. United States, 933 F.2d 639, 640 (8th Cir. 1991)(recognizing that, because the statute of limitations is an affirmative defense, and not a bar to jurisdiction, that the defendant bears the burden of proving the applicability of the statute of limitations); Donatelle Plastics Inc. v. Stonhard, Inc., 2002 WL 31002847 at *6 (D. Minn., September 5, 2002)("Failure to bring an action within the period prescribed by the statute of limitations is an affirmative defense, and [the defendant] bears the burden of proving all the elements of that affirmative defense"), citing Thiele v. Stich, 425 N.W.2d 580,

583 (Minn. 1988); Ritchey v. Horner, 244 F.3d 635, 639 (8th Cir. 2001).

Accordingly, in order to assert a statute of limitations as an affirmative defense, the defendant must make a prima facie showing that the statute bars the action. If that showing is made, the burden then shifts to the plaintiff, to show "countervailing evidence." United States v. Hodgekins, 805 F. Supp. 653, 660 (N.D. Ind. 1992). As the United States Tax Court has explained:

> The bar of the statute of limitations is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proof with respect thereto. * * * Where the party pleading such issue makes a showing that the statutory notice was issued beyond the normally applicable statute of limitations, however, such party has established a prima facie case. At that point, the burden of going forward with the evidence shifts to the other side, and the other party has the burden of introducing evidence to show that the bar of the statute is not applicable. Where the other party makes such a showing, the burden of going forward with the evidence then shifts back to the party pleading the statute, to show that the alleged exception is invalid or not otherwise applicable. The burden of proof, i.e., the burden of ultimate persuasion, however, never shifts from the party who pleads the bar of the statute of limitations.

Adler v. Commissioner, 85 T.C. 535, 540 (1985)[citations omitted]. Accordingly, here, the Defendants must make a prima facie showing that the ten-year statute of limitations, for the collection of a

tax liability, had run prior to the date on which the Plaintiff's brought this action.

Under the general rule, that period would run from the date on which the taxpayer was assessed that liability. See, Section 6502(a). However, when a Section 6166 election is made, Section 6503(d) provides that "[t]he running of the period of limitations for collection of any tax imposed by chapter 11 shall be suspended for the period of any extension of time for payment granted under the provisions of [S]ection * * * 6166." See also 26 C.F.R. §301.6503(d)(1) ("[W]here an estate is granted an extension of time as provided * * * under the provisions of section 6166, for the payment of any estate tax, the running of the period of limitations for collection of such tax is suspended for the period of time for which the extension is granted.").

The crux of the Defendants' affirmative defense is that, under Section 6166(g), the "period of time for which the extension [was] granted" ended on the date of the foreclosure sale -- February 5, 1990 -- such that the statute of limitations expired on February 5,

2000, well prior to the date on which this action was filed.[4] Section 6166(g) provides as follows:

> If (i) one third or more in value of an interest in a closely held business which qualifies under subsection (a)(1) is distributed, sold, exchanged, or otherwise disposed of, * * * then the extension of time for payment of tax provided in subsection (a) shall cease to apply and any unpaid portion of the tax payable in installments shall be paid upon notice and demand from the Secretary.

As a result, in order to make out a prima facie showing, that the statute of limitations bars this action, the Defendants must show that one third or more of the value of the qualifying interest was sold. The Government maintains that the Defendants have not made that showing, and we agree.

We have thoroughly vetted the evidence submitted by the Defendants in support of their Motion, and we can find no evidence which establishes the value of the qualifying property, or that the foreclosure resulted in the sale of one-third or more of that value.

---

[4]Initially the Defendants had cited to a more recent version of the statute, which provided, in relevant part, that the extension of time granted by Section 6166 ceased to apply "[i]f **any** portion of an interest in a closely held business which qualifies under subsection (a)(1) is distributed, sold, exchanged, or otherwise disposed of." However, that version of the Statute does not, under its express terms, apply to persons -- like Gladys Askegard -- who died prior to December 31, 1981. At the time of the Hearing, the Defendants acknowledged their error, and agreed that the 1978 version of the Statute, which we quote in the text of this Order, controls our analysis.

Absent such a showing, we are unable to find, as a matter of law, that Section 6166(g) is applicable, and consequently, cannot find, as the Defendants request, that the foreclosure sale ended the suspension of the statute of limitations effected by the Section 6166 election. Therefore, the Defendants have not satisfied their burden to proffer a prima facie showing that the statute of limitations period had run, prior to the date on which the Government commenced this action, and we deny their Motion for Summary Judgment on that ground.

We wish to make clear, however, that in reaching our decision, we intimate no ruling as to the potential merits of the Defendants' affirmative defense, and if the Defendants present evidence, at Trial, demonstrating that Section 6166(g) is applicable to the facts presented, then they will not be precluded from reasserting their limitations argument. Given our decision, we decline to address the larger issue presented by the Defendants' Motion -- namely, whether the foreclosure sale automatically triggered the running of the statute of limitations, as the Defendants argue. Such an intriguing, and complex issue of law, must be deferred until a prima facie showing is made that Section 6166(g) applies to this action, or else we venture into disfavored advisory opinions.

However, the Defendants argue that the statute of limitations started to run even before the foreclosure sale -- namely, on the

date that the Estate first failed to make an interest installment payment, as required by Section 6166. We proceed to that argument.

B. Whether the Statute of Limitations Ran from the Estate's First Failure to Comply with the Requirements of Section 6166.

The Defendants allege that, as early as June 29, 1984, the Estate was in "default," because it failed to comply with the Section 6166 requirements, particularly the applicable payment and reporting requirements. The Defendants allege that such a "default," without more, is sufficient to trigger the statute of limitations. According to the Defendants, since the Government could have initiated collection immediately upon that default, it should not be permitted to unilaterally extend the statute of limitations, by simply not issuing a notice and demand for payment.

We find, however, that the argument is precluded by the plain language of the Statute. Section 6166(g)(3) provides for the acceleration of payment in the event that an estate fails "to make payment of principal or interest." Generally, under that provision, "if any payment of principal or interest under this section is not paid on or before the date fixed for its payment * * * the unpaid portion of the tax payable shall be paid upon notice and demand from the Secretary." Section 6166(g)(3)(A). Nowhere in the language of the statute does it provide that the failure to make a single payment will automatically trigger the acceleration of the

deferred payment, and hence, the running of the statute of limitations. Rather, the statute quite plainly states that notice and demand are required.

Further, Section 6166(g)(3)(B), which contains the exception to the more general rule of the previous provision, provides that, if an estate fails to make a payment on or before its due date, but makes that payment within six months of that date, "the provisions of subparagraph (A) shall not apply with respect to such payment." As a result, in the event that an estate misses a payment, but makes that payment up within six months, the Government cannot accelerate the deferred taxes. Were we to read the previous provision to permit a single missed payment to automatically trigger acceleration, then this provision would have no meaning, as the debt would have already been accelerated prior to the time during which the Estate could cure its failure to pay an installment payment. Therefore, we cannot agree with the Defendants construction of the statute, which would prompt any failure of an installment payment to commence the running of the statute of limitations.

We further find that our reading of the statute is corroborated by the purpose which fostered the enactment of Section 6166. As we previously related, the statute "was enacted to relieve estates which consist largely of interests in a closely held business from the immediate imposition of estate taxes and thereby to avoid

the necessity of a partial or complete sale of a small business." Lake Shore National Bank v. Coyle, 419 F.2d 958, 962 (7th Cir. 1969). Such a purpose would be defeated by a rule that would provide for automatic acceleration for a single missed interest payment, "[s]ince estates which are late in payments are often those most in need of the relief granted under section 6166." Id. Therefore, "Congress intended to give some flexibility to the District Director in handling late installment," by providing a window of opportunity for the Estate to cure the error of a missed payment. Such additional flexibility, even in the event of the failure to cure a missed payment, would allow the IRS to chose not to accelerate the debt, as an exercise of discretion.[5] Id.

---

[5]We recognize that allowing the IRS to determine when to start the running of the statute of limitations may present difficulties of proof at the time of Trial, particularly where, as here, a substantial period of time has expired, before the IRS commenced suit. Nonetheless, Congress provided for a ten year statute of limitations and, if Congress believed, in the exercise of its judgment, that such a period of time would unnecessarily complicate the Trial of any alleged Estate Tax deficiencies, Congress was well positioned to commence the running of the applicable statute by some other mechanism than that which Congress enacted.

While, we suspect, at some point in time either laches, or due process, could vitiate, on timeliness grounds, an otherwise meritorious cause of action, that is not an issue that we may resolve by summary disposition. But cf., Kansas v. Colorado, 514 U.S. 673, 687 (1995)("The common law has long accepted the principle 'nullum tempus occurrit regi' -- neither laches nor statutes of limitations will bar the sovereign."), quoting Block v. North Dakota ex rel. Board of Univ. and School Lands, 461 U.S. 273, 294 (1983)(O'Connor,
(continued...)

Consequently, we find no merit to the Defendants' assertion, that their failure to make installment payments were sufficient to accelerate the deferred taxes, and thereby commence the running of the statute of limitations. In sum, the Defendants have failed to satisfy their burden of demonstrating that they are entitled to Judgment as a matter of law, and therefore, we deny their Motion for Summary Judgment.

NOW, THEREFORE, It is --

ORDERED:

That the Defendants' Motion for Summary Judgment [Docket No. 32] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

---

[5](...continued)
J. dissenting). Such a fact-driven issue, if resolvable by Summary Judgment, would require more thorough, focused briefing, than has been presented here.