UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER FOR ENTRY OF JUDGMENT

* * * * * * * * * * * * * * * * * * *

United States of America,

Plaintiff,

vs.

Douglas R. Askegard, individually and as personal representative of the Estate of Gladys M. Askegard; David Askegard; Wayne Aslesen; Aileen Askegard Clough, individually and as trustee of the Clough Family Trust and John Doe, Trustee of the Clough Family Trust,

Defendants. Civ. No. 01-845 (RLE)

* * * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by the provisions of Title 28 U.S.C. §636(c). For these purposes, the Government appeared by Mary E. Bielefeld,

Trial Attorney, Tax Division, United States Department of Justice; and the Defendants appeared by Jon J. Jensen, Esq.

A Bench Trial on the matter was completed on February 10, 2004, at which the Defendant effectively admitted the allegations contained in the Government's Complaint, but asserted that liability was precluded by the applicable statute of limitations. By Order dated January 6, 2005, we found the statute of limitations defense unpersuasive and, accordingly, held that the Defendants were liable for the unpaid estate taxes. However, we did not enter a Judgment at that time, but instead, we directed the parties confer, in an effort to reach a stipulated proposed Judgment and, if an agreement could not be reached, the parties were directed to submit their respective proposals to the Court for a final Judgment.

The parties were unable to agree upon a proposed stipulated Judgment, and each party submitted a proposed Judgment, along with briefing to support their respective positions. The last submission from the parties was received on April 4, 2005.[1] Based upon the entirety of the Record before us, the files, Exhibits, and

[1]While we do not reiterate the Findings of Fact, and Conclusions of Law, that were entered on January 6, 2005, the attached Memorandum is expressly made a part of those Findings of Fact, and Conclusions of Law, insofar as the Memorandum (continued...)

argument of counsel, and being fully advised in the premises, we now enter Judgment, as follows:

## II. Entry of Judgment and Order

Pursuant to the Findings of Fact and Conclusions of Law entered on January 6, 2005, and the Memorandum that follows, Judgment is entered as follows:

1. The Estate of Gladys Askegard is indebted to the United States for unpaid estate tax liabilities in the amount of $374.612.57, plus interest at the rate prescribed by Title 26 U.S.C. §6621, from July 1, 2000, until the Judgment is paid.

2. That Douglas R. Askegard is indebted to the United States for unpaid estate tax liabilities in the amount of $374,612.57, plus interest at the rate prescribed by Title 26 U.S.C. §6621, from July 1, 2000, until the Judgment is paid.

3. That Aileen Askegard Clough is indebted to the United States in the amount $204,552.00, plus interest at the rate prescribed by Minnesota Statutes Section 549.09, Subdivision 1(c), from the date of the entry of Judgment until the Judgment is paid.

---

[1](...continued)
contains factual findings and legal conclusions in support of the Judgment we enter.

4. That the Clough Family Trust is indebted to the United States in the amount of $204,502.00, plus interest at the rate prescribed by Minnesota Statutes Section 549.09, Subdivision 1(c), from the date of the entry of Judgment until the Judgment is paid.

5. That Wayne Aslesen is indebted to the United States in the amount of $65,850.00, plus interest at the rate prescribed by Minnesota Statutes Section 549.09, Subdivision 1(c), from the date of the entry of Judgment until the Judgment is paid..

6. That David Askegard is indebted to the United States in the amount of $189,785.00, plus interest at the rate prescribed by Minnesota Statutes Section 549.09, Subdivision 1(c), from the date of the entry of Judgment until the Judgment is paid.

7. That the United States has valid and subsisting liens, by virtue of the June 21, 1982, and April 2, 1984, assessments against the Estate, and by virtue of a lien for estate tax deferred on all property belonging to the Estate of Gladys Askegard, including the real property legally described as follows:

> The Southwest Quarter (SW 1/4) of Section 16, Township 137, Range 48 West of Fifth Principal Meridian, Clay County, Minnesota, LESS all that part of the Southwest Quarter of Section 16, Township 137 North, Range 48 West of the Fifth Principal Meridian, which is included within the following metes and bounds description:

> Commencing at a Point on the West Line of Section 16, Township 137 North, Range 48 West of the Fifth Principal Meridian, Clay County, Minnesota, said point being located 2,396.56 feet North of the Southwest Corner of said Section as measured along the West Section Line; thence bear North 90°00'00" East along a line which is perpendicular to the East Right-of-Way Line of Trunk Highway No. 75 a distance of 75.00 feet, more or less, to a point of Intersection with said East Right-of-Way Line, said Point of Intersection being also the Point of Beginning of the tract of land herein described; thence North 88°49'27" East a distance of 360.08 feet; thence south 00°00'00" West a distance of 242.00 feet; thence South 88° 49'27" West a distance of 360.08 feet, more or less, to a Point of Intersection with the aforementioned East Right-of-Way Line of Trunk Highway No. 75; thence North 00°00'00" East along said Right-of-Way Line a distance of 242.00 feet, more or less, to the Point of Beginning.

located in Clay County, Minnesota.

8. That the United States is entitled to foreclose its tax lien against the real property described the above paragraph 7, and the property will be sold pursuant to further Order of the Court.

9. That Aileen Askegard Clough, individually, and as co-trustee of the Clough Family Trust, will cooperate with the United States in its attempts to sell such property.

10. That the United States is entitled to its litigation costs and shall submit a Bill of Costs to the Clerk of Court within fourteen (14) days after the entry of Judgment.

11. That each party shall be liable for its own attorneys' fees.

12. That the Judgment against the Estate of Gladys Askegard is the maximum that the Government may collect from one, or all, of the named Defendants.

LET JUDGMENT BE ENTERED ACCORDINGLY.

BY THE COURT

Dated: September 30, 2005

s/Raymond L. Erickson

Raymond L. Erickson
CHIEF U.S. MAGISTRATE JUDGE

MEMORANDUM

Based upon our Order of January 6, 2005, the parties jointly proposed that the following areas of agreement be included within the Judgment: 1) the Defendant Estate of Gladys M. Askegard (the "Estate") is indebted to the United States for estate tax liabilities in the amount of $374,612.57; 2) the Defendant Douglas Askegard

("Askegard") is indebted to the United States for unpaid estate tax liabilities in the amount of $374,612.57; 3) the Defendant Aileen Askegard Clough ("Clough") is indebted to the United States in the amount of $204,552.00; 4) the Defendant Clough Family Trust is indebted to the United States in the amount of $204,502.00;[2] 5) the Defendant Wayne Aslesen ("Aslesen") is indebted to the United States in the amount of $65,850.00; 6) the Defendant David Askegard is indebted to the United States in the amount of $189,785.00; 7) the United States has valid and subsisting liens by virtue of the June 21, 1982 , and April 2, 1984, assessments against the Estate, and by virtue of a lien for estate tax deferred on all property and rights to property belonging to the Estate, including real property legally described as follows:

> The Southwest Quarter (SW 1/4) of Section 16, Township 137, Range 48 West of Fifth Principal Meridian, Clay

[2]The Government's proposed Judgment provides that the tax liability for the Clough Family Trust should be $204,502.00, while tax liability for Aileen Askegard Clough was calculated at $204,552.00. The Defendants proposed Judgment asserts that the tax liability for both Aileen Askegard Clough and the Clough Family Trust is $204,552.00. The parties' submissions do not address this discrepancy, and the allegations in the Complaint -- which were admitted by the Defendants -- reflect that the Government's characterization of the liability for the Clough Family Trust is accurate for these purposes. We conclude, on the Record presented, that the $50.00 difference in computation, between the Clough Family Trust, and for Aileen Askegard Clough, is attributable to a $50.00 lawnmower that Aileen Askegard Clough received from the Estate, and that was not passed on to the Clough Family Trust.

> County, Minnesota, LESS all that part of the Southwest Quarter of Section 16, Township 137 North, Range 48 West of the Fifth Principal Meridian, which is included within the following metes and bounds description:
>
> Commencing at a Point on the West Line of Section 16, Township 137 North, Range 48 West of the Fifth Principal Meridian, Clay County, Minnesota, said point being located 2,396.56 feet North of the Southwest Corner of said Section as measured along the West Section Line; thence bear North 90°00'00" East along a line which is perpendicular to the East Right-of-Way Line of Trunk Highway No. 75 a distance of 75.00 feet, more or less, to a point of Intersection with said East Right-of-Way Line, said Point of Intersection being also the Point of Beginning of the tract of land herein described; thence North 88°49'27" East a distance of 360.08 feet; thence south 00°00'00" West a distance of 242.00 feet; thence South 88° 49'27" West a distance of 360.08 feet, more or less, to a Point of Intersection with the aforementioned East Right-of-Way Line of Trunk Highway No. 75; thence North 00°00'00" East along said Right-of-Way Line a distance of 242.00 feet, more or less, to the Point of Beginning.

located in Clay County, Minnesota; and 8) each party shall be liable for its own attorney's fees.

A Status Conference was conducted, on February 3, 2005, at which time, the parties identified three contested issues concerning the proposed Judgment, namely: 1) the amount of interest, if any, that should be calculated into the Judgment; 2) the respective amounts that could be collected from each of the individual Defendants;

and 3) the Government's entitlement to litigation costs. The parties have since conferred on those issues and, in a submission by the Government, have summarized the areas of agreement, as follows:

> The parties agree that the judgment against the Estate should equal the total unpaid estate tax plus accrued interest as of July 1, 2000, with additional interest accruing according to law. The judgment against the Estate is the maximum the United States may collect from one or all of the defendants. The United States is entitled to collect the unpaid estate tax liabilities once, and collection may be from multiple sources, that is, various defendants. The United States will look to each of the defendants for part or all of the unpaid total due (as discussed below), depending on their respective judgment amount, but the total collected from all of them will not exceed the unpaid estate tax plus statutory interest.
>
> The parties also agree that the judgments against the individual defendants (except Douglas Askegard) should be, at the very least, equal to the values of the property they received from the Estate. The judgment against Douglas Askegard should be equal to the sum of the property he distributed to the other defendants.

United States' Reply to Defendants Post-Trial Brief Regarding Interest, Collection, and Costs ("United States' Reply"), at pp. 1-2. [internal footnotes omitted].

The Government has also advised that the parties have since agreed that the Government is entitled to litigation costs, under Title 28 U.S.C. §§1920, 1921 and 1922, but they appear to disagree to the amount, with the Government claiming a total

amount of $2,184.82. United States' Memorandum in Support of Entitlement to Interests on Judgments, at pp. 2-3.[3]

Given those areas of agreement, the only remaining dispute among the parties -- and it is a tortuous one -- is whether the Judgment in favor of the Government should include statutory interest and, if so, the amount of interest for each of the named Defendants.

A. The Government's Entitlement to Statutory Interest.

As an initial matter, we address the Defendants' request that we use our equitable powers to abate, or deny, the imposition of interest. In support of their request, the Defendants suggest that the Government's delay in prosecuting this case was unreasonable, and that Title 26 U.S.C. §6404(e)(1)(A) allows the Court to abate interest for tax deficiencies which are "attributable in whole or in part to any

[3]The Defendants filed a subsequent Memorandum, in which they do not take issue with the Government's characterizations of the areas of agreement between the parties. See Docket No. 77. Aside from an award of costs, neither the parties' written submissions, nor their oral arguments to the Court, suggest that there is any ongoing disagreement concerning the matters identified by the Government as areas of agreement. Moreover, to the extent that the Government's entitlement to litigation costs is disputed, we conclude that an award of litigation costs is warranted under Rule 54(d)(1), Federal Rules of Civil Procedure. However, to the extent that there is any dispute as to the amount of the award of costs, we direct the Government to submit a Bill of Costs to the Clerk of Court within fourteen (14) days of this Order.

unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act." The Government opposes this request, and contends that the Court does not have the authority to abate interest, under Section 6404(e)(1), as the discretion for the abatement of interest rests exclusively with the Secretary of the Treasury, and is not subject to judicial review.

Section 6404(e)(1) provides as follows:

> (e) Abatement of interest attributable to unreasonable errors and delays by the Internal Revenue Service --
>
> > (1) In general -- In the case of any assessment of interest on --
> >
> > > (A) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, or
> > >
> > > (B) any payment of any tax described in section 6212(a) to the extent that any unreasonable error or delay in such payment is attributable to such an officer or employee being erroneous or

> dilatory in performing a ministerial or managerial act,
>
> the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

The clear language of this statute dictates that the "Secretary" is vested with the authority to determine whether interest on a tax liability should be abated. Prior to 1996, the prevailing authority interpreted this provision as precluding judicial review, since the abatement decisions of the Secretary were entirely discretionary. See, e.g., Argabright v. United States, 35 F.3d 472, 475 (9th Cir. 1994); Selman v. United States, 941 F.2d 1060, 1064 (10th Cir. 1991); Horton Homes, Inc. v. United States, 936 F.2d 548, 554 (11th Cir. 1991); see also, Title 5 U.S.C. §701(a)(2)(excluding from judicial review agency action that "is committed to agency discretion by law.").[4]

---

[4]Within this Circuit, and District, the result was the same -- that the decision to abate interest was solely vested in the Secretary's discretion -- but our Court of Appeals affirmance of the District Court was expressed in an unpublished decision, and therefore, we cite the ruling by footnote. See Langer v. United States, 1997 WL 458473 at *1 (D. Minn., February 19, 1997), aff'd, 129 F.3d 122 at *1, 1997 WL 633072 (8th Cir., October 15, 1997), citing Argabright v. United States, 35 F.3d 472,

(continued...)

The Court, in Argabright v. United States, supra at 476, summarized the reasoning behind its interpretation of Section 6404(e)(1), as well as the interpretations adopted in Selman and Horton Homes, as follows:

> We find the analyses of the Horton Homes and Selman courts fully persuasive. Although the [Title 5 U.S.C.] §701(a)(2) exception is triggered only "in those instances where 'statutes are drawn in such broad terms that in a given case there was not law to apply,'" Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971)(quoting S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)), this is such an instance. Like the Horton Homes and Selman courts, we conclude that [Section] 6404(e)(1) leaves courts without "any basis for distinguishing between such instances in which the abatement should and should not be granted." Selman, 941 F.2d at 1063. Lacking "judicially manageable standards * * * for judging how and when [the] agency should exercise its discretion," Heckler [v. Cheney], 470 U.S. [ 821, 830], 105 S.Ct. [1649, 1655 (1985)], we hold that judicial review is not available for agency action taken pursuant to 26 U.S.C. §6404(e)(1).

However, in 1996, Congress enacted the Taxpayer Bill of Rights, which includes the following provision that was codified at Title 26 U.S.C. §6404(h) as follows:

---

[4](...continued)
476 (9th Cir. 1994), Selman v. United States, 941 F.2d 1060, 1062-64 (10th Cir. 1991), and Horton Homes, Inc. v. United States, 936 F.2d 548, 554 (11th Cir. 1991).

> (h) Review of denial of request for abatement of interest.--
>
> > (1) In general. -- The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of mailing of the Secretary's final determination not to abate interest.
> >
> > (2) Special rules. --
> >
> > * * *
> >
> > > (C) Review -- An order of the Tax Court under this subsection shall be reviewable in the same manner as a decision of the Tax Court, but only with respect to the matters determined in such order.

The 1996 Amendments also added the term "unreasonable," in describing the type of "error and delay" that would justify abatement under Section 6404(e)(1), and enlargened the scope of that provision to include "managerial" as well as "ministerial" acts. The 1996 Amendments apply to requests for abatement made after July 30, 1996. See <u>Public Law 104-168, Section 302(b), 110 Stat. 1452</u>.

There is presently a split of authority, as to whether the 1996 Amendments allow review of the Secretary's abatement determination in the District Court. A number of Courts have held that, while the 1996 Amendments established an avenue for the review of the Secretary's abatement determination, exclusive jurisdiction over that review is vested with the Tax Court. See, Hinck v. United States, 64 Fed. Cl. 71, 81 (Fed. Cl. 2005), appeal filed (Fed. Cir. 05-5099, March 24, 2005); Brewer v. C.R. Baugh, 370 F. Supp.2d 988, 993 (D. Ariz. 2005); Balhaus v. Internal Revenue Service, 341 F. Supp.2d 1145, 1150 (D. Nev. 2004); Carroll v. United States, 198 F. Supp.2d 328, 360 (E.D. N.Y. 2001), vacated on other grounds, 338 F.3d 61 (2nd Cir. 2003); Dogwood Forest Rest Home, Inc. v. United States, 181 F. Supp.2d 554, 558 (M.D. N.C. 2001); Davies v. United States, 124 F. Supp.2d 717, 720-721 (D. Me. 2000); Henderson v. United States, 95 F. Supp.2d 995, 1003-1004 (E. D. Wis. 2000). Yet, other Courts have held that the 1996 Amendments provide a standard upon which to review the Secretary's decision, and accordingly, that review may be had in the Federal District Court. See Beall v. United States, 336 F.3d 419, 429 (5th Cir. 2003); Leiter v. United States, 2004 WL 303210 at *8 (D. Kan., January 22, 2004). The cases appear to be irreconcilable, and the issue does not appear to have been addressed by our Court of Appeals.

Our resolution of the issues before us does not require that we resolve this split in authority, and therefore, we decline to do so. Specifically, there is nothing in the Record to suggest that the Defendants have made an administrative claim to the Government for the abatement of interest under Section 6404(e)(1), and accordingly, there is no decision by the Secretary to review.[5] Under the plain language of Section 6404(e)(1), the Secretary, as opposed to this Court, is vested with the authority to abate interest, and even those Courts which have found that the District Court may review the Secretary's abatement decision, have stopped far short of determining, in the first instance, whether interest should be abated under Section 6404(e)(1).

The Court's decision, in Beall, was predicated on its conclusion that the denial of a claim for abatement was no longer barred by Title 5 U.S.C. §701(a)(2), and that

[5]The Trial Record reflects that Clough, Aslesen, and Askegard, filed overpayment and abatement claims with the Internal Revenue Service -- by filing a Form 843 -- on the ground that they had made overpayments, as a result of the running of the statute of limitations, see Trial Exhibit No. 44, and it appears that those claims were resolved in the Defendants' favor. See Trial Exhibit No. 45. However, those claims make no mention of interest abatement, under Section 6404(e)(1), and accordingly, we cannot construe the filing of those claims as having exhausted the Defendants' administrative remedies. See True v. United States, 190 F.3d 1165, 1171 (10th Cir. 1999)(" [The] burden is on the claimant to bring asserted grounds for recovery to the Internal Revenue Service; the Commissioner is not required to 'ferret out possible grounds for relief which a taxpayer might assert.'"), citing Herrington v. United States, 416 F.2d 1029, 1032 (10th Cir. 1969).

such a claim could be brought under Title 26 U.S.C. §7422, which allows a taxpayer to bring a civil action for a refund. See Beall v. United States, supra at 427, n. 9. By its express terms, an action may not be commenced under Section 7422(a) until "a claim for refund or credit has been duly filed with the Secretary," leading the Supreme Court to observe, "[i]t is undisputed that [Section] 7422 requires administrative exhaustion." United States v. Williams, 514 U.S. 527, 533 (1995); see United States v. True, 190 F.3d 1165, 1171 (10th Cir. 1999)("Under [Section 7422], if the taxpayer does not adequately raise an issue at the administrative level, the courts have no jurisdiction to consider the issue in a later suit for refund.").

Similarly, in Leiter, the taxpayer had contested a tax assessment by filing a Form 843 Claim for Refund with the IRS. Leiter v. United States, supra at *1. The IRS denied the claim, and the taxpayer filed a request for a Collection Due Process Hearing, at which time, he requested abatement of interest. Id. The Hearing Officer denied the taxpayer's request for abatement in a written "Notice of Determination." In the action that followed, the Court determined that it had jurisdiction to review the Secretary's decision not to abate interest under Section 6404(e), but it proceeded to hold that the Secretary did not abuse its discretion in denying the taxpayer's claim for abatement. Id. at *8.

In short, we decline to read either Beall, or Leiter, as authority for the proposition that a District Court may abate interest, under Section 6404(e), without the taxpayer having first exhausted his administrative remedies. The Defendants have not established that they ever exhausted such remedies with the Internal Revenue Service, as our Record does not contain any determination by the Secretary concerning the abatement of interest under Section 6404(e)(1). Therefore, finding that, at the very least, Section 6404(e)(1) does not authorize the Court to abate interest, in the first instance, we decline the Defendants' request for such an abatement.[6]

[6]Even if we were to reach that issue, we are unable to fault the Government for seeking to collect the outstanding estate tax due within the applicable statute of limitations. While, presumably, the Government could have acted with greater dispatch in the commencement of this lawsuit, we cannot overlook that, whether on statute of limitations grounds, or otherwise, the Defendants elected to avoid the payment of that tax liability, with resultant delay. Moreover, Congress extended, for reasons of public policy, the period in which the Defendants could employ the assets of the Estate without being threatened by the payment of estate taxes, again, with attendant delay. Nor do we overlook that each of the Defendants had the benefit of the Estate's assets, or elected to expend them as the Defendants chose, for as much of the period of the delay as suited the individual needs of each Defendant. Under these circumstances, were we to reach the issue, we would decline the Defendants' request for an abatement as unreasonable. While, in practical effect, the result we reach substantially diminishes the Government's original claim for interest, the result was the product of the operation of law, and not an exercise in discretion.

B. The Interest Liabilities of the Named Defendants.

As was reflected in our Order of January 6, 2005, Askegard, as the personal representative of the Estate, is liable to the Government under Title 26 U.S.C. §3713(b). Order of January 6, 2005, "Conclusions of Law", at ¶4, n. 9. The Complaint alleges that the respective liabilities of the Defendants David Askegard, Aslesen, Clough, and the Clough Family Trust, derive from Title 26 U.S.C. §6324(a)(2). Complaint, at ¶¶33-35, 40-41, 47-48. Accordingly, we analyze the liability for interest as to each of those Defendants separately from the liability for interest of the Estate and Askegard.

1. The Interest Liability of David Askegard, Aslesen, Clough, and the Clough Family Trust.

In pertinent part, Title 26 U.S.C. §6324(a)(2) provides that, "[i]f the estate tax imposed by chapter 11 is not paid when due, then the spouse, transferee, trustee * * * or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax." Our Court of Appeals has described the effect of this statutory language as follows:

> Section 6324(a)(2) both creates and limits the liability of the transferee. First §6324(a)(2) creates transferee liability. Pursuant to §6324(a)(2), if an estate tax is not paid when due, the transferee who receives property included in the decedent's gross estate is personally liable for the estate tax. The transferee's personal liability for the transferor's tax, includes interest. See 26 U.S.C. §6601(e)(1) (providing that Internal Revenue Code's reference to "tax" shall also refer to interest imposed on that tax). The liability for interest runs from the due date of the estate tax return until the date the tax is paid. 26 U.S.C. §6601(a), (b)(4).
>
> Section 6324(a)(2) also limits that liability. Pursuant to §6324(a)(2), a transferee's personal liability is limited "to the extent of the value at the time of the decedent's death" of the property actually transferred. As discussed earlier §6601(e)(1) provides that "any reference * * * to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax." Tax liability includes liability for interest, and, thus, §6324(a)(2) clearly contemplates that the limitations imposed upon a transferee's tax liability also encompasses the transferee's liability for interest.

<u>Baptiste v. Com'r of Internal Revenue</u>, 29 F.3d 433, 437 (8th Cir. 1994), cert. denied, 513 U.S. 1190 (1995).

Accordingly, the Court, in <u>Baptiste</u>, determined that the appellant, there, who had received $50,000.00 as a beneficiary of the decedent's life insurance policy, was not

liable for the unpaid estate taxes for the decedent's estate beyond the value of the assets that were transferred. Id. at 438.[7]

Applying Baptiste, the Defendants urge that David Askegard, Aslesen, Clough, and the Clough Family Trust, cannot be subject to the collection of interest that would result in a collection greater than the amount of property that each Defendant received from the Estate. The Government has responded to the Defendants' argument by urging, for the first time, that the allegations contained in its Complaint -- that the liability of David Askegard, Aslesen, Clough, and the Clough Family Trust, is predicated on Section 6324(a)(2) -- was erroneous, and that the legal authority for the Judgments against those individuals rests in Minnesota State law.[8] Specifically, the

[7]Baptiste involved identical distributions of insurance proceeds to two brothers. The Tax Court issued unfavorable decisions to the brothers, and one brother appealed to the Eighth Circuit Court of Appeals, while the other brother appealed to the Court of Appeals for the Eleventh Circuit. See Baptiste v. Com'r of Internal Revenue, 29 F.3d 1533 (11th Cir. 1994). The conclusions reached by the two Circuit Courts are conflicting on the issue of interest liability, under Section 6324(a)(2), in that the Eleventh Circuit held that a transferee, under that Section, could be held liable for statutory interest on the transferred property. Id. at 1542.

[8]The Government has urged that we reconsider the Eighth Circuit's holding in Baptiste, and adopt the analysis of the Eleventh Circuit Court of Appeals. See footnote 7, infra. However, our Court of Appeals' holding, in Baptiste, remains good law in this Circuit, and is binding on our analysis. Accordingly, we are in no position to disregard, or ignore, the holding of a Court of superior jurisdiction which continues

(continued...)

Government now argues that Section 6324(a)(2) does not apply to the property transferred to Clough, the Clough Family Trust, David Askegard, and Aslesen, because that property was not part of the gross estate under Sections 2034 to 2042.

While we have little doubt that the property transferred to the individual Defendants was part of the "gross estate," see Title 26 U.S.C. §2031(a)("The value of the gross estate of the decedent shall be determined by including * * * the value at the time of his death all property, real or personal, tangible or intangible, wherever situated."), transferee liability, under Section 6324(a)(2), is limited to "property included in the gross estate under sections 2034 to 2042 * * *." Accordingly, transferee liability does not attach, under Section 6324(a)(2), unless the property that was received by the transferee falls within the ambit of Title 26 U.S.C. §§2034 to 2042. See United States v. Estate of Young, 592 F. Supp. 1478, 1485 (E.D. Pa. 1984); In re Roth, 2004 WL 716743 at *6 (W.D. Pa., April 1, 2004). As was observed by the Court in Roth, Sections 2034 to 2042 "govern various forms of nonprobate property that is subject to estate tax despite the fact that it need not pass through probate." In re Roth, supra at *6, citing Title 26 U.S.C. §2034(dower or curtsey interest); Title 26

[8](...continued)
to have precedential weight.

U.S.C. 2035 (gifts made within three (3) years of death); Title 26 U.S.C. §2036 (transfers with a retained life estate); Title 26 U.S.C. §2037(transfers that take effect at death); Title 26 U.S.C. §2038 (revocable transfers); Title 26 U.S.C. §2039 (annuities); Title 26 U.S.C. §2040 (joint interests); Title 26 U.S.C. §2041 (powers of appointment); Title 26 U.S.C. 2042 (proceeds from life insurance).

As alleged in the Complaint, and admitted by the Defendants, the basis for transferee liability against Clough was her receipt of a lawn mower valued at $50.00, and real property valued at $204,502.00. Complaint, at ¶28. The real property was conveyed to Clough pursuant to a Personal Representative's Deed that was executed by Askegard, on July 26, 1983, and was recorded on July 28, 1983. Id. at ¶29. The real property was subsequently transferred, by Clough, to the Clough Family Trust. Id. at ¶31. Accordingly, the basis for liability against the Clough Family Trust was its receipt of the real property.

Similarly, the transferee liability of Aslesen is predicated on his receipt of real property valued at $52,225.00, and personalty valued at $13,625.00,[9] for a total of

[9]The Complaint lists the following items of personalty, which were received by Aslesen from the Estate: an "Applicator," an "Auger," a "Melroe 15'Chislplow," an "IH Cubcadet Tractor," and an "IH 914 Combine, pull type." Complaint, at ¶37.

$65,850.00. Id. at ¶37. The real property was conveyed to Aslesen pursuant to a Personal Representative's Deed that was executed by Askegard, on June 10, 1983, and recorded on June 20, 1983. Id. at ¶¶38-39.

The basis for transferee liability against David Askegard is his receipt of real property valued at $168,415.00, and certain items of personalty valued at $21,370.00,[10] for a total of $189,785.00. Id. at ¶¶43-44. The real property was conveyed to David Askegard pursuant to a Personal Representative Deed that was executed by Askegard, on June 7, 1983, and recorded on July 13, 1983. Id. at ¶¶45-46.

Neither the identified items of personalty, nor the real property received by any of these individual Defendants, appear to fall within the ambit of Sections 2034 to 2042, and accordingly, Clough, the Clough Family Trust, Aslesen, and David Askegard, do not appear to be subject to personal transferee liability under Section 2634(a)(2). See United States v. Estate of Young, supra at 1485 (surviving tenant was

[10]The Complaint lists the following items, which were received by David Askegard from the Estate: a "Hydraulic drill filling auger," a "24' grain drill," a "28' implement carr," a "16' JD 190 swather," a "53' melroe toothdrag," a "JD 71 flexi-plt 24'," "sprayer, fargo cart," a "JD 940 land leveler," a "JD 48 loader," a "JD 200 swather," a "beet cult. swenson 24'," a "IH slat-bd plow," a "mower lawnboy," a "truck '59 ford w/ box," a "auto '77 Pontiac," and a "jari lawnmower." Complaint, at ¶44.

not personally liable, under Section 6324(a)(2), for one-half interest of real property that was properly included in the estate's return as probate property under Section 2033).

For the first time in this litigation, the Government asserts, in its final Reply Memorandum, that Clough, the Clough Family Trust, Aslesen, and David Askegard, are personally liable for estate tax liability under Minnesota State law, and specifically, the Minnesota Fraudulent Transfer Act. See Minnesota Statutes Sections 513.41 to 513.51. The Government maintains that liability, under that Act, is present, and has been sufficiently alleged in their Complaint, even if the claim, itself, was not expressly pled. We agree. See, e.g., Complaint, ¶¶28-31, 32, 37-39, and 43. The Defendants oppose the Government's attempts to impose personal liability under the Act, and maintain that there is no factual basis to support a conclusion that any of the individual Defendants acted fraudulently.[11]

---

[11]While not addressed by either party, we harbored some concern that, while we found the statute of limitations had not run on the applicable Federal statute, surely the statute applicable to the Minnesota Fraudulent Transfer Act had to have run by the date on which the Complaint, in this matter, was filed. Research discloses, however, that State statutes of limitation are inapplicable to the Commissioner in proceedings to collect Federal taxes such as under Title 26 U.S.C. §6901, as is the case here . See McGraw v. Com'r of Internal Revenue, 384 F.3d 965, 978 (8th Cir. 2004), citing (continued...)

The Government directs our attention to Minnesota Statutes Section 513.45(a), which sets forth the basis for proving a constructively fraudulent transfer, and which provides as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

See Clarinda Color, LLC v. BW Acquisitions Corp., 2004 WL 2862298 at *5 (D. Minn., June 14, 2004)(citing Section 513.45(a) for the proposition that "[a] plaintiff may prove a transfer was constructively fraudulent.").

Under that provision, "constructive fraud requires proof of (1) a transfer; (2) a prior claim; (3) no 'reasonably equivalent value'; (4) debtor insolvency." Id.; Great Southern Life Ins. Co. v. Agriculture Building Co. Industries, 2002 WL 924249 at *2 (D. Minn., May 1, 2002).

---

[11](...continued)
Phillips v. Com'r of Internal Revenue, 283 U.S. 589, 602-03 (1931); cf., United States v. West Texas State Bank, 357 F.2d 198, 201 (5th Cir. 1966)("[T]he Government has not abandoned its governmental position, since this is a suit to collect taxes," and "it is acting within its sovereign capacity and is immune from time restrictions imposed by a state statute."); Phillips v. Com'r of Internal Revenue, supra at 602-03 ("The United States is not bound by state statutes of limitation unless Congress provides that it shall be.").

As has been conceded by the Defendant, and expressly found in our previous Findings of Fact, each of the individual Defendants were transferred property from the Estate, see Order of January 6, 2005, "Findings of Fact," at ¶¶8-11, and it is without question that the Government had a tax claim against the Estate prior to those transfers. Moreover, our previous Findings of Fact also detailed that each of the transfers were made with the Estate receiving little, if any, consideration in return. Id. Similarly, the Record supports a finding that the transfers in question, along with the transfer of a Promissory Note from the Estate to Askegard and his wife, rendered the Estate insolvent.[12] Therefore, we find that the distribution of the Estate's assets to

[12]In our Conclusions of Law, we observed that, "in the absence of a meritorious statute of limitations defense, the Defendants concede Askegard's liability as the Personal Representative of the Estate, under Title 31 U.S.C. 3713(b)." Conclusions of Law, at ¶4. Based on this concession, and upon a finding that the Record established that Askegard was liable under Section 3713(b), we held that "any Judgment to be entered would conclude an adjudication of Douglas Askegard's liability under Section 3713(b)." Id. at n. 9.

Personal liability under Section 3713(b) requires proof of the following elements: "(1) the personal representative distributed assets of the estate; (2) the distribution rendered the estate insolvent; and (3) the distribution took place after the personal representative had notice of the government's claim." United States v. Estate of Kime, 950 F. Supp. 950, 954 (D. Neb. 1996). Accordingly, having found that Askegard is personally liable under Section 3713(b), we also find that his transfers of property, including those to Aslesen, Clough, and David Askegard, rendered the Estate insolvent

(continued...)

Clough, Aslesen, and David Askegard, were constructively fraudulent[13] under Minnesota Statutes Section 513.45.

In a situation where a fraudulent transfer results in an unpaid tax liability, the tax code contains a provision for the collection of transferred assets. See Title 26 U.S.C. §6901(a)(1). Under Section 6901:

> The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
>
> (1) Income, estate, and gift taxes –
>
> (A) Transferees. -- The liability, at law or in equity, of a transferee of property --
>
> * * *
>
> (ii) of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes) * * *.

---

[12](...continued)
for the purposes of determining whether liability is present under the Minnesota Fraudulent Transfer Act.

[13]Necessarily, the term "fraudulent" carries perjorative connotations, which we do not mean to impart, here. We simply apply a legal doctrine by its commonly known name, and we make no suggestions, let alone derogatory ones, concerning the character, ethics, or mores, of the Defendants.

Accordingly, Section 6901 provides a procedural vehicle for the Government to collect the Estate's unpaid taxes from Clough, Aslesen, David Askegard, and the Clough Family Trust, as transferees. See Stanko v. Com'r of Internal Revenue, 209 F.3d 1082, 1084 (8th Cir. 2000); Locke v. Com'r of Internal Revenue, 1998 WL 416507 at *1 (9th Cir., June 15, 1998)(transferee of fraudulent transfer was liable for unpaid estate tax liability under Section 6901(a)(1)(A)).

However, as the Government concedes, Section 6901(a) "neither creates nor defines a substantive liability." Com'r of Internal Revenue v. Stern, 357 U.S. 39, 42 (1958); see Gumm v. Com'r of Internal Revenue., 93 T.C. 475, 579 (1989). Accordingly, where a Federal law does not create liability, "state law governs the extent to which a transferee is liable for the transferor's taxes." Stanko v. Com'r of Internal Revenue, supra at 1084, citing Com'r of Internal Revenue v. Stern, supra at 42. Here, the Government has identified Minnesota Statutes Section 549.09 as a basis for its collection of interest against Clough, Aslesen, David Askegard, and the Clough Family Trust.

While Section 549.09 allows for a limited collection of pre-verdict, pre-award, or pre-reported interest, we cannot read this provision in isolation. The Minnesota Fraudulent Transfers Act contains specific provisions which allow a creditor, who is

damaged by a fraudulent transfer, to obtain "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim," and "subject to the principles of equity and in accordance with applicable rules of civil procedure: * * * any other relief the circumstances may require." Minnesota Statutes Section 513.47(a)(1) and (a)(3)(iii). However, the Section also sets forth the following rights of creditors against a transferee, and limitations on collections against a transferee:

> (b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under section 513.47(a)(1), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:
>
> > (1) the first transferee of the asset or the person for whose benefit the transfer was made; or
> >
> > (2) any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee.
>
> (c) If the judgment under subsection (b) is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.

Minnesota Statutes Sections 513.48(b) and (c).

The total tax liability for the Estate is $374,612.57, plus interest.[14] The value of the distributions received by Clough, David Askegard, and Aslesen, do not, individually, exceed the total tax liability, and therefore, each of those Defendants may be liable to the Government for the value of the assets that were received, to the extent that the sum total collected by the Government from those Defendants, as well as the Clough Family Trust, does not exceed the tax liability of the Estate.[15] However, under the plain language of Section 513.48(c), the Judgment against those Defendants may not exceed the value of the assets at the time of the transfer unless equities require an adjustment. The Government has not attempted to establish that any equities would require an adjustment, and accordingly, under Minnesota law, the liability of Aslesen, Clough, the Clough Family Trust, and David Askegard, is limited to the value of the property they each received.

Our interpretation of Section 513.48(c), as a limitation on the Government's entitlement to interest, is supported by the Court's analysis in Stanko v. Com'r of

---

[14]The basis for the interest against the Estate, as well as the rate of interest, will be addressed in the following portions of this Memorandum.

[15]The collective value of the transferred assets to Clough, Aslesen, and David Askegard, appears to be $460,187.00, which also appears to exceed the tax liability of the Estate.

Internal Revenue, supra at 1088, where the Court held that an identical provision of the Nebraska Fraudulent Transfer Act did not allow the Government to collect interest from a transferee prior to the date that the transferee received notice from the Government of transferee liability.[16] In so holding, the Court, in Stanko, recognized that "the question of prejudgment interest after the date of the Commissioner's notice of transferee liability to [the transferee] may well be a matter of federal law," see Estate of Stein, 37 T.C. 945, 961 (1962)(interest calculation for transferee who receives assets sufficient to satisfy the tax liabilities of the transferor is determined by Federal law), citing Leo L. Lowy, 35 T.C. 393 (1960) , but declined to address the issue on appeal, since it had not been addressed in the Tax Court's Judgment. Id. Here, however, the Government did not issue a notice of transferee liability to David Askegard, Aslesen, Clough, or the Clough Family Trust, United States' Reply, at p. 8, and has predicated its entire claim to prejudgment interest on Minnesota law. United States' Reply, at pp. 8-9. Therefore, since Minnesota law does not allow transferee liability to exceed the value of the transferred assets, the Government is not entitled to

[16]In Stanko v. Commissioner of Internal Revenue, 209 F.3d 1082, 1088 (8th Cir. 2000), the Government argued that interest should accrue from the time that the property was transferred.

prejudgment interest from Clough, the Clough Family Trust, Aslesen, and David Askegard.

While we conclude that Section 513.48(c) limits a Judgment to the value of the transfer which precludes an award of prejudgment interest, it is silent on the accrual of post-judgment interest. Such interest is clearly contemplated by Minnesota Statutes Section 549.09, Subdivision 2, which provides that "interest shall accrue on the unpaid balance of the judgment or award from the time that it is entered or made until it is paid, at the annual rate provided in subdivision 1." In turn, Section 549.09, Subdivision 1(c), provides as follows:

> The interest shall be computed as simple interest per annum. The rate of interest shall be based on the secondary market yield of one year United States treasury bills, calculated on a bank discount basis as provided in this section.

Accordingly, under Minnesota law, the Government is entitled to post-judgment interest at the rate provided under Section 549.09, Subdivision 1(c).[17]

2. The Interest Liability of the Estate.

---

[17]We have applied State law to the Government's collection of post-judgment interest based on the Government's representation that it does not seek interest under Title 28 U.S.C. §1961(c)(1), as to Clough, Aslesen, and David Askegard. See United States' Reply, at pp. 2-3.

The Government has represented that the parties agree that the Government is entitled to collect interest from the Estate for the period from July 1, 2000, until the Judgment is paid. Aside from its request to abate interest under Section 6404(e)(1), the Defendants do not contest this representation and, in any event, Title 26 U.S.C. §6601, as well as Title 28 U.S.C. §1961(c)(1), certainly establish that the Government is entitled to interest on the tax liabilities owed by the Estate, at the underpayment rate established under Title 26 U.S.C. §6621, from the date on which the payment became due, until the date that the payment is received.[18] Section 6621(a)(2) provides that the underpayment rate "shall be the sum of * * * the Federal short-term rate," which is determined by the Department of the Treasury, "plus * * * 3 percentage points." Therefore, the Government is entitled to interest from the Estate, at the underpayment rate established by Section 6621, from July 1, 2001, until the Judgment is paid.

2. The Interest Liability of Askegard.

[18]The Defendants have urged that, under Title 28 U.S.C. §1961(a), prejudgment interest is limited to accrual from the date the action was commenced. However, we do not read that provision to contain such a limitation, given the direction of Section 1961(c)(1), which provides, in pertinent part, "[t]his section shall not apply in any judgment of any court with respect to any internal revenue tax case."

The Government's claim against Askegard is twofold, in that it asserts that he is liable as both the personal representative of the Estate, and because he was, personally, a transferee under Title 26 U.S.C. §6324(a)(2). Since we conclude that the Government is entitled to statutory interest against Askegard, under Title 31 U.S.C. §3713(b), we need not reach the issue of whether the Government would be entitled to statutory interest against Douglas Askegard, as a transferee, under Section 6324(a)(2).

In our previous Conclusions of Law, we determined that "any Judgment to be entered would include an adjudication of Askegard's liability under Section 3713(b)." Order of January 6, 2005, "Conclusions of Law," at ¶4, n. 9. The Defendants now argue that the Court's holding, in Baptiste, precludes an award of interest against Askegard. In Baptiste, the Court's holding did not specifically address the liability of a personal representative for interest owed by the Estate, and that decision, therefore, is inapposite to the issue presented here. However, as the Government concedes, "the executor's liability [under Section 3713(b)] is limited to the value of the distributions, or the amount of debt owed to the United States, whichever is lesser." United States v. Estate of Dickerson ex rel. Tate, 189 F.Supp.2d 622, 624 (W.D. Tex. 2001); United States v. Coppola, 85 F.3d 1015, 1020 (2nd Cir. 1996)("Of course, the executor's

liability is limited to the extent of the payment or value of the assets he distributes from the estate prior to the payment of the taxes.”).

Here, the Record establishes that Askegard distributed assets from the Estate that well exceeded the Estate’s tax liability, and accordingly, Askegard is liable for the full amount of the Government’s claim against the Estate. See United States v. Estate of Kime, 950 F. Supp. 950, 954 (D. Neb. 1996)(finding personal representative liable for the estate’s taxes, penalties, and interest, where the value of the property that he distributed from the estate exceeded the amount of the Government’s claim).[19] Therefore, having found that the Government is entitled to recover interest from the Estate, and that the liability of the Estate does not exceed the value of the assets that were transferred by Askegard, we conclude that Askegard may be held personally liable for the interest imposed upon the Estate.

R.L.E.

---

[19]The Court’s holding in United States v. Estate of Kime, 950 F. Supp. 950, 954 (D. Neb. 1996), is consistent with our conclusion that Baptiste is inapposite to the claim against Askegard under Section 3713(b). Notably, Baptiste was decided prior to Kime, and was, therefore, binding precedent on the Kime Court. Thus, while the Court, in Kime, did not specifically address Baptiste, it had no need to do so as Baptiste was not apposite to the issue presented.